UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANTHONY DeMARCO,

        Plaintiff,

v.

ANDRE ROSSI *et al.*,

        Defendants.

Case No.  C07-5352RJB/JKA

REPORT AND RECOMMENDATION

**NOTED FOR:
August 22, 2008**

This 42 U.S.C. § 1983 Civil Rights action has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Magistrates' Rules MJR 1, MJR 3, and MJR 4.  Before the court is a motion for summary judgement filed by the remaining defendants (Dkt. # 41). Dr. Furst, moved for summary judgment separately (Dkt # 33).   The plaintiff has not responded to the motion for summary judgment.  Local Rule 7 (b) (2) in part states "if a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit."

## FACTS

The following facts are taken from the complaint (Dkt # 5).  Plaintiff alleges he was diagnosed with "ADHD" and possible Fetal Alcohol Syndrome when he was 13 years old.  He alleges he was prescribed Ritalin for his conditions.  He also alleges without Ritalin he is disruptive and violent.  While incarcerated, and on Ritalin, Mr. DeMarco alleges he received 10 infractions between August 2004 and January 2005.  Plaintiff

REPORT AND RECOMMENDATION
Page - 1

alleges his Ritalin dose was increased in January of 2005. Between January 2005, and January 2006, he received only one infraction.

Plaintiff alleges that in February of 2006 the named defendants in this action reduced his Ritalin over a four week period and by the end of February he was not taking this prescription any longer. Between February 2006, and April 2007, plaintiff received 43 general or serious infractions.

Plaintiff alleges that when he first learned his Ritalin was going to be reduced and then eliminated he wrote to Dr. Furst asking why and that the Doctor told him there was a new state wide formulary and stimulant medication would no longer be available.

Plaintiff, with the aid of Dr. Furst, attempted to obtain Ritalin through the prison medical system. On April 14, 2006, Dr. Furst wrote:

> Patient does have a documented history of responding well to stimulant medication during his adolescence and has previously undertaken trials with Strattera, Wellbutrin, and Desipramine that were either ineffective or limited by side effects. He responded well to Ritalin when I prescribed it to him last year and it would be my recommendation that he resume treatment with stimulant medication.

(Dkt. # 5, complaint page 3g). The plaintiff contends the recommendation was rejected and he has been denied adequate medical care in violation of the Eighth Amendment. He names as defendants the members of the committee that denied the recommendation as well as other medical providers.

Defendants have set forth additional facts which are now uncontested (Dkt. # 41). Defendant's state:

> Plaintiff first began taking Ritalin while housed as a juvenile at Ryther Child Treatment Center in Seattle, Washington in 1996 at the age of 13. Complaint, p. 3b, ¶ 1. Plaintiff took Ritalin for approximately Eight months at Ryther before being discharged back to Echo Glen Juvenile Detention Facility in 1997. Exhibit 1, Deposition of Anthony DeMarco, p. 10, l. 9 - p. 11, l. 15. Plaintiff thereafter did not take Ritalin again until January 3, 2005, after he had been re-incarcerated with DOC. Plaintiff's Complaint, p. 3b, ¶ 4.
>
> In May of 2005, Plaintiff was transferred to SCCC. Id. at 3c, ¶ 6. While there, he was seen by psychiatrist Dr. Michael Furst. Following his initial visit with the Plaintiff on August 4, 2005, Dr. Furst concluded "Patient does not currently demonstrate significant symptoms of adult ADHD and I would be suspicious of this diagnosis given his reported benefits with low dose stimulant therapy. His early childhood was sufficiently chaotic that I would expect he would have difficulties managing his emotional states including anger." Exhibit 1, Exhibit 1, August 4, 2005, Progress Note. Nevertheless, Dr. Furst agreed to continue Plaintiff's Ritalin prescription at that time pending review of past treatment records. Id.
>
> During a visit with Dr. Furst on October 13, 2005, Plaintiff brought copies of records from Ryther Child Treatment Center. In his progress note Dr. Furst noted that though the records mention "he was diagnosed with ADHD and treated with stimulant though there is no documentation regarding the assessment or the clinical indications which would meet criteria for such a diagnosis. Patient did respond somewhat to treatment with Ritalin but continued to have difficulties with significant disruptive behaviors and conduct disorder." Exhibit 1, Exhibit

2, October 13, 2005, Progress Note.

Beginning on January 1, 2006, DOC changed its formulary, removing certain stimulant medications, including Ritalin, from the list of medications that could be prescribed to offenders. Exhibit 2, Declaration of Dr. Andre Rossi, ¶ 2. Those medications were removed after considering the best clinical outcomes in the medical literature, medical necessity and safety and security reasons. Id. at ¶ 4. The Pharmacy and Therapeutics (P&T) Committee reviewed the medications in the formulary specifically considering whether the medication was safe and clinically appropriate for the medical condition, and were also appropriate and safe for use in the correctional setting. Id. The stimulant medications used to treat ADHD were removed in order to minimize the risk of improper use and or abuse that could jeopardize patient and staff safety. Id. Alternative medications were available on the new formulary to treat ADHD. Id.

Mental health and other treatment providers can request medications no longer on the formulary for their patients by filling out a form known as a Non-Formulary Request (NFR). Id. at ¶ 5. For Ritalin, in order to be granted an exception, the mental health provider needs to be able to show that the offender is suffering from a severe mental illness or a head trauma that cannot be treated in any other way because the offender has a medical necessity. Id. Once the health care provider has made the request, the P&T Committee reviews the request, the offender's records, medication history and current medication regime to determine if the offender meets the criteria. Id. at ¶ 7. If the offender meets the criteria, and the P&T Committee finds that the offender does have a serious medical necessity, the exception to the formulary will be granted.

Because of the removal of Ritalin from the formulary, Plaintiff was tapered off of it the first two months of 2006. Exhibit 1, p. 22, l. 18 . p. 23, l. 22. Dr. Furst substituted another drug, Desipramine, an anti-depressant that had been effective with other ADHD patients. Id.

On October 5, 2006, Plaintiff was transferred from SCCC to McNeil Island Corrections Center (MICC) in Steilacoom, Washington and was no longer seen by Dr. Furst. Exhibit 1, Exhibit 3, October 5, 2006, Chart Note. Advanced Registered Nurse Practitioner (ARNP) Barbara Reed-Stamps, notes Plaintiff's prescription history while with DOC to treat ADHD including Wellbutrin and Strattera in 2004, Ritalin or methylphenidate, the generic equivalent, beginning in January 2005 until February 2006, then Desipramine. Id., October 12, 2006, Chart Note. Ms. Reed-Stamps suggests restarting Wellbutrin as Plaintiff had found that drug helpful and he agreed. Id.

On December 1, 2006, Plaintiff again saw ARNP Reed-Stamps. Exhibit 1, Exhibit 4, December 1, 2006, Chart Note. Plaintiff was requesting another NFR for Ritalin. Id. However, Ms. Reed-Stamps had reviewed Dr. Furst's progress notes and the other treatment records of Plaintiff. Id. She also noted he presented as calm with no hyperactivity or impulsivity. Id. Therefore she concluded that Plaintiff "currently does not meet criteria for ADHD per presentation." Id. She did, however, increase Plaintiff's dosage of Wellbutrin.

On February 7, 2007, Plaintiff met with Ms. Reed-Stamps again and she increased the dosage of Wellbutrin to the maximum amount. Exhibit 1, Exhibit 5, February 7, 2007, Chart Note. On March 2, 2007, Plaintiff was again seen by Ms. Reed-Stamps. Exhibit 1, Exhibit 6, March 2, 2007, Chart Note. She informed him that "he did not meet criteria for ADHD in dysfunctionality as an adult the way he did as a child and consequently [she] would not fill out a N.F.R. for Ritalin for him." Id.

In April 2007, Plaintiff was transferred to AHCC. On May 31, 2007, he was seen by Psychology Associate Mark McEnderfer. Exhibit 1, Exhibit 7. Plaintiff was again insistent upon getting Ritalin prescribed for him. Id. However, Mr. McEnderfer found Plaintiff to be "functioning reasonably well at this time" despite his complaints of ADHD. Id. It was his

assessment, similar to Dr. Furst's, that "[Plaintiff.s] difficulty controlling his impulses appear more rooted in long standing conduct/antisocial personality disorder." Id.

Plaintiff is not claiming any physical injuries from not being prescribed Ritalin. Exhibit 1, p. 15, ll. 7-13. Rather he contends there is a direct correlation between his being denied Ritalin and an increase in his infraction behavior. Complaint, p. 3c-3d, ¶¶ 9-11. The "injury" he suffered was the loss of 80 days good conduct time as a result of being found guilty of the infractions. Id. at p. 3d, ¶ 11.

Plaintiff claims he received thirty nine general infractions and four serious infractions between the time he was taken off Ritalin on February 6, 2006, and April 25, 2007. Complaint, p. 3c, ¶ 9. However, Plaintiff admits an offender does not lose any good conduct time for general, or minor, infractions. Exhibit 1, p. 43, ll. 1-3. According to Plaintiff's disciplinary record, he did receive four serious infractions during the time frame he cites. Exhibit 3, Declaration of Katrina Toal, Attachment A, Offender Based Tracking System, Legal Face Sheet, pp. 13-14. The first was on March 1, 2006, for violating the conditions of a cell confinement order; the second was on June 29, 2006, for accumulating too many minor infractions; the third was on April 9, 2007, for a positive drug test for amphetamines; and the last was on April 25, 2007, for possession of fishing line, an unauthorized tool. Id. However, while Plaintiff was on Ritalin from January 2005 to February 2006, he was also cited for two serious infractions. Id. The first was on April 30, 2005, for fighting and the second was on January 6, 2006, for refusing to proceed when ordered and inciting a group demonstration. Id.

(Dkt. # 41 pages 2 to 6) (footnotes omitted).

Defendants argue they are entitled to summary judgment as plaintiff has failed to state a claim. They also argue plaintiff fails to state a claim because he has no physical injury and that defendants are entitled to qualified immunity.

## STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T. W. Elec.

REPORT AND RECOMMENDATION
Page - 4

1 Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).

2 The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial,
3 e.g. the preponderance of the evidence in most civil cases. Anderson, 477 U.S. at 254; T.W. Elec. Service Inc.,
4 809 F.2d at 630. The court must resolve any factual dispute or controversy in favor of the nonmoving party
5 only when the facts specifically attested by the party contradicts facts specifically attested by the moving party.
6 Id.

7 The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in
8 hopes that evidence can be developed at trial to support the claim. T.W. Elec. Service Inc., 809 F.2d at 630
9 (relying on Anderson, *supra*). Conclusory, nonspecific statements in affidavits are not sufficient, and "missing
10 facts" will not be "presumed." Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990).

## DISCUSSION

12 Plaintiff alleges a violation of his Eighth Amendment right to medical or mental health treatment. The
13 government has an obligation to provide medical care for prisoners, and the Eighth Amendment proscribes
14 deliberate indifference to their serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976), Such
15 conduct is actionable under 42 U.S.C. § 1983. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992).

16 In order to establish deliberate indifference there must first be a purposeful act or failure to act on
17 the part of the defendant. McGuckin, at 1060. A difference of opinion between a prisoner and medical
18 authorities regarding proper medical treatment does not give rise to a section 1983 claim. Franklin v.
19 Oregon, State Welfare Div., 662 F.2d 1337, 1344 (9th Cir. 1981). Mere negligence in diagnosing or
20 treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights.
21 Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988). Second, a prisoner can make no claim for
22 deliberate medical indifference unless the denial was harmful. McGuckin, at 1060; Shapely v. Nevada Bd.
23 of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).

24 Now that the court has defendants version of the events, a better picture of the steps taken to treat
25 plaintiff has emerged. As early as May 2005, Dr. Furst questioned the diagnoses of ADHD (Dkt. # 41, page 2).
26 In December of 2006, when plaintiff demanded Ritalin, the Advanced Registered Nurse Practitioner noted he
27 was observed to be calm, with no hyperactivity or impulsivity (Dkt. # 41, page 4). She concluded he did not
28 meet the criteria for an ADHD diagnosis based on his presentation. Id. In 2007, plaintiff was seen by a

REPORT AND RECOMMENDATION
Page - 5

Psychology Associate who concluded plaintiff's behavioral problems were routed in a long standing conduct /antisocial personality disorder, not ADHD (Dkt. # 41, page 5).

Plaintiff has failed to come forward with any evidence to refute the assessments of the health care providers. This action is a disagreement over proper medical treatment. A difference of opinion between a prisoner and medical authorities regarding proper medical treatment does not give rise to a section 1983 claim. Franklin v. Oregon, State Welfare Div., 662 F.2d 1337, 1344 (9th Cir. 1981). The motion for summary judgment should be **GRANTED**. This dismissal would count as a strike pursuant to the Prison Litigation Reform Act.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **August 22, 2008.** as noted in the caption.

DATED this 30 day of July, 2008.

/s/ *J. Kelley Arnold*
J. Kelley Arnold
United States Magistrate Judge